**CONOCO, INC., Appellee,**

v.

**INMAN OIL CO., INC., Appellant,**

**Ronald C. Inman.**

**No. 86–1800.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 9, 1987.

Decided April 6, 1987.

---

Jerry L. Wilkerson, Salem, Mo., for appellant.

Lee J. Keller, Houston, Tex., for appellee.

---

1. The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri. The case was tried to the magistrate with the

Before ROSS, BOWMAN and MAGILL, Circuit Judges.

ROSS, Circuit Judge.

In *Conoco Inc. v. Inman Oil Co.*, 774 F.2d 895 (8th Cir.1985), this court concluded that Conoco had breached a duty of good faith and fair dealing owed to Inman Oil under a Jobber Franchise Agreement. Conoco's breach of contract consisted of bidding directly against Inman Oil, its own distributor, to supply petroleum products to St. Joe Minerals Corporation (St. Joe), a pre-existing customer of Inman Oil. As stated in our previous decision, Conoco "used its superior position as a supplier to out-price Inman Oil and appropriate the latter's oldest and largest customer, St. Joe." *Id.* at 908. We therefore remanded this case to the magistrate [1] for a determination of Inman Oil's damages "flowing from Conoco's 1980 and 1981 bids for the St. Joe contracts." *Id.* at 909.

Conoco's 1980 bid resulted in a contract to supply 200,000 gallons of bulk hydraulic oil to St. Joe in 1981. Inman Oil estimated $0.24 per gallon as the profit it would have earned had its own bid been accepted for this contract. Because of labor problems, however, St. Joe actually purchased only 113,638 gallons under the 1981 contract. The magistrate therefore calculated Inman Oil's lost profits from the loss of the 1981 contract as $27,273.12, i.e., $0.24 per gallon for 113,638 gallons.

Similarly, Conoco's 1981 bid resulted in a contract for the delivery in 1982 of 50,000 gallons of packaged lubricant products. Inman Oil's estimated lost profits for that contract were $0.28 per gallon, i.e., $14,000. Thus the magistrate awarded Inman Oil a total of $41,273.12 as the damages flowing from Conoco's 1980 and 1981 bids for the 1981 and 1982 St. Joe contracts. We affirm.

■ Inman Oil asserts on appeal that it is entitled to an additional $0.12 per gallon for both the 1981 and 1982 contracts. This figure derives from the $0.12 per gallon

parties' consent, and his decision was appealed directly to this court. FED.R.CIV.P. 73(a), (c).

paid by Conoco to its delivery agent for transporting the petroleum products to St. Joe. According to Inman Oil, Conoco in its dual capacity as supplier and distributor decided to absorb delivery costs so as to underbid Inman Oil for the St. Joe contracts. Therefore Inman Oil reasons that the delivery cost of $0.12 per gallon was in the nature of bid assistance or price support furnished by Conoco, as supplier, to the Conoco division which bid against Inman Oil at the distributor level in 1980 and 1981. Inman Oil asserts that had Conoco properly refrained from competing against Inman Oil for the St. Joe contracts, Conoco would or should have provided equivalent bid assistance to Inman Oil.

We consider this reasoning highly speculative. As the magistrate concluded, Conoco had no obligation to use Inman Oil as its delivery agent. Moreover, the nature of Conoco's breach was in bidding against Inman Oil. Thus the damage flowing from that breach is limited to Inman Oil's own lost profits and is otherwise unrelated to Conoco's decision to absorb delivery costs on the St. Joe contracts. The general contract language quoted in support of Inman Oil's argument that it was entitled to "distributor development" assistance does not translate into the specific $0.12 per gallon price support or bid assistance which Inman Oil claims as additional damages for the lost St. Joe contracts.

■ Inman Oil also contends that Conoco's successful bids for the 1981 and 1982 St. Joe contracts drove Inman Oil out of business. Inman Oil ceased operations in February 1982. On this issue the magistrate reviewed the evidence and concluded that long term financial ill health, poor management, market forces, and emotions experienced by Inman Oil's owner, Ronald Inman, precipitated Mr. Inman's decision to close the company. These findings are not clearly erroneous. Accordingly, the judgment of the magistrate is affirmed.

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Mis-